IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-1163

D.B.U., *et al*.,

    Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,

    Respondents-Defendants.

## MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

    Petitioners-Plaintiffs ("Petitioners") move for permission to proceed under their initials as a pseudonym in the above-captioned case and request that all public filings and references to Petitioners in this litigation, including in exhibits, use their initials. The named Petitioners are challenging the Presidential Proclamation entitled the "Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua'" and its implementation that threatens them with summary removal from United States. They do so in a time of extreme anti-immigrant rhetoric and hostility.

    Petitioners ask this Court to grant anonymity because the complaint, declarations, and subsequent filings will contain highly sensitive and personal information about their immigration status and history, and because Petitioners are challenging the very Proclamation that might subject them to retaliatory removal from the United States if they were identified. Further, Respondents-Defendants ("Respondents") will not be prejudiced in their ability to litigate the constitutionality of the Proclamation, and the public's interest in knowing the identities of the Petitioners, which

are currently unknown to the public, is minimal. Petitioners are willing to provide the Court with their names. Thus, this Court should protect the Petitioners' safety and liberty interests and grant the Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that the complaint "name all the parties." *See also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). In the Tenth Circuit, however, plaintiffs are permitted to proceed anonymously under three independent circumstances: (1) cases involving matters of a highly sensitive and personal nature; (2) where there is a real danger of physical harm; or (3) where the injury litigated against would be incurred as a result of disclosure. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).

## ARGUMENT

I. **ANONYMITY IS WARRANTED UNDER ALL THREE *FEMEDEER* CIRCUMSTANCES**

All three *Femedeer* factors weigh in favor of granting Petitioners' anonymity here. This case contains highly sensitive and personal information about Petitioners' immigration status and physical characteristics, and those Petitioners will likely be subject to removal and hostility if their identities were revealed. The injury they are litigating against—removal and other retaliatory actions pursuant to Respondents' invocation of the Alien Enemies Act—would be incurred if forced to reveal their identities publicly. Moreover, the balance of equities favor proceeding under pseudonym since the rights that Petitioners seek to protect by remaining anonymous do not prejudice the federal government's ability to litigate the legality of the Proclamation. And Petitioners are willing to reveal their identities to the Court, if necessary.

2

### a. Pseudonyms Are Necessary to Protect Petitioners' Highly Sensitive and Personal Information.

This case satisfies the first basis for anonymity recognized by the Tenth Circuit: matters of a "highly sensitive and personal nature." *Femedeer*, 227 F.3d at 1246. Each Petitioner fled Venezuela under different but similarly urgent circumstances, including persecution by police for political activity in opposition to the current political regime, persecution by police after leaving their employment, detention of their family members based on association with them, and assassination of family members by Tren de Aragua. *See* Ex. A to Petitioners' Motion for TRO, *Barber Declaration*, ¶ 3; Ex. B to Petitioners' Motion for TRO, *Hightower Declaration*, ¶¶ 4, 9.

Federal courts across jurisdictions, including in the Tenth Circuit, recognize that asylum seekers and others pursuing fear-based immigration protections often present claims so sensitive that public identification would cause serious harm. *See, e.g.*, *Doe v. U.S. Immigr. & Customs Enf't*, No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461, at *2–3 (D.N.M. Oct. 3, 2024); *G.P. v. Garland*, No. 21-2002, 2023 WL 4536070, at *1 & n.1 (1st Cir. July 13, 2023); *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *1, *4 n.1 (D. Mass. May 12, 2023); *Doe v. Smith*, No. CV 17-11231-LTS, 2017 WL 6509344, at *1 & n.1 (D. Mass. Dec. 19, 2017); *J.R. v. Barr*, 975 F.3d 778, 781 (9th Cir. 2020); *W.G.A. v. Sessions*, 900 F.3d 957, 960 n.1 (7th Cir. 2018); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. U.S. Citizenship & Immigr. Servs.*, No. 1:21-cv-00576, 2021 WL 1907562, at *4 (E.D. Cal. May 12, 2021); *Ms. Q. v. U.S. Imm. & Customs Enf't*, No. 1:18-cv-02409, 2018 WL 10050939, at *3 (D.D.C. Oct. 24, 2018); *A.B.T. v. U.S. Citizenship & Immig. Servs.*, No. 2:11-cv-02108-RAJ, 2012 WL 2995064, at *3–4 (W.D. Wash. July 20, 2012).

The same is true here. Petitioners are seeking protection against removal on fear-based grounds not only to Venezuela, where they previously experienced government persecution, but also to El Salvador, where they face a credible risk of arbitrary detention and inhumane treatment. Public disclosure of their identities would expose them to further harm from both authoritarian governments, each of which would have access to sensitive allegations at the heart of their asylum applications.

### b. Pseudonyms Are Necessary Because Petitioners Likely Face Retaliatory Harms of Arrest, Prosecution, and Removal Under the Challenged Proclamation.

This case also satisfies the second basis for pseudonymity under *Femedeer*: a real danger of physical harm. 227 F.3d at 1246. Courts in this District have granted similar relief where plaintiffs faced credible threats of violence or retaliation if publicly identified. *See Does I–V v. Rodriguez*, No. 06-cv-00805, 2007 WL 684114, at *2 (D. Colo. Mar. 2, 2007) (allowing anonymity for immigrant laborers who risked retaliation by their employer).

Petitioners face imminent removal either to Venezuela or to El Salvador, both of which pose serious and well-documented threats to their safety. As courts have recognized, even the act of seeking asylum can provoke retaliation from authoritarian regimes. *See Doe v. Barr*, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020); *Doe*, 2021 WL 1907562, at *4; *Doe*, 2024 WL 4389461, at *2–3. This is especially the case where Petitioners are challenging the government's allegations of Petitioners' affiliation with Tren de Aragua ("TdA"), which are not only inaccurate but also profoundly stigmatizing. See Ex. A to Petitioners' Motion for TRO, *Barber Declaration*, ¶¶ 4-5; Ex. B to Petitioners' Motion for TRO, *Hightower Declaration*, ¶¶ 4-5.  Courts have long recognized that accusations of criminality carry serious reputational consequences. *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). This Court has likewise granted anonymity in cases

4

involving substantially less risk than what is presented here. *See Does 1–11 v. Board of Regents of the University of Colorado*, No. 21-cv-02637, 2022 WL 43897, at *2 (D. Colo. Jan. 5, 2022) (permitting students in COVID-19 litigation to proceed under pseudonym based on the possibility of stigma and reputational harm alone).

Moreover, Petitioners face the risk of harm in the United States. Anti-immigrant rhetoric targeting Venezuelan migrants—particularly those falsely accused of gang affiliation—has reached new levels of intensity. *See, e.g.*, Layla Ferris, *As Trump Puts Aurora, Colorado in Spotlight*, CBS News (Oct. 11, 2024) (noting the mayor's rebuttal to claims about widespread TdA activity)[1]; Russell Contreras, *Anti-Immigrant Rhetoric Sparks Fears of More Hate Crimes*, Axios (Mar. 7, 2024) (reporting record-high anti-Latino hate crimes); Human Rights First, *Extremism Fact Sheet* (Mar. 2023) (noting a "growth and normalization of xenophobic and anti-immigrant extremism" and its "wide-ranging impact")[2]. Petitioners fear that public association with TdA—even in the context of challenging false allegations—would provoke law enforcement scrutiny, harassment, and community ostracization.

Public identification would also expose Petitioners' family members to danger. All the Petitioners have relatives still living in Venezuela, who could be subjected to retaliation or questioning if Petitioners are publicly identified as adversaries of the government or accused gang members. All also have family in the United States with pending immigration claims, who may face retaliation or jeopardize their ability to seek relief if their familial ties to this litigation are made public. Courts have acknowledged that the risk of harm to third parties may independently support anonymity. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008);

---

[1] *See* https://perma.cc/6KCW-8F8D.
[2] *See* https://perma.cc/5GZM-5ENR.

*International Refugee Assistance Project v. Trump*, No. 17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (noting risk of retaliation to relatives abroad as valid basis for pseudonymity); *Advanced Textile Corp.*, 214 F.3d at 1063–71.

In sum, Petitioners face a real and immediate risk of physical harm from both government and non-government actors, in both the United States and abroad, if their identities were revealed. These are precisely the kinds of exceptional circumstances the Tenth Circuit has recognized as justifying pseudonymity. *Femedeer*, 227 F.3d at 1246.

### c. Pseudonyms Are Necessary to Prevent the Very Injury This Litigation Seeks to Redress.

This case also satisfies the third circumstance under *Femedeer*, where pseudonymity is appropriate because "the injury litigated against would be incurred as a result of the disclosure." 227 F.3d at 1246. As this Court has explained, "[a] plaintiff's efforts to vindicate [their] rights could themselves trigger the very injury [they] seek to prevent." *Roe v. Catholic Health Initiatives Colorado*, No. 11-cv-02179, 2012 WL 12840, at *5 (D. Colo. Jan. 4, 2012).

Petitioners seek to challenge the federal government's reliance on unsupported and unreviewed allegations of gang affiliation to justify their expedited removal to countries where they face persecution and torture. Public identification and association with gang-related allegations would cause and compound the harm in immigration proceedings, which turn on credibility and perceived character, that they otherwise seek to avoid. *See Doe*, 2021 WL 1907562, at *4 (noting that "fear of stigmatization and denial of immigration benefits" can justify pseudonymity where disclosure would interfere with future legal pathways); *see also Doe v. Colorado State Univ.*, No. 24-cv-02076, 2024 WL 5077683, at *2 (D. Colo. Dec. 10, 2024) (granting pseudonymity because disclosure would "associate [plaintiff] with harmful and stigmatizing accusations" and worsen the injury being litigated); *see also Doe v. Willis*, No. 23-

6

cv-2171, 2023 WL 6907100, at *2 (D. Colo. Sept. 22, 2023) (permitting pseudonymity where disclosure "plainly will incur, and thus compound, the very harm [the plaintiff] already allegedly has suffered").

In short, public disclosure would transform this lawsuit from a vehicle for protection into a source of further harm. It would reinforce the very injury Petitioners seek to prevent: permanent and public branding as dangerous individuals, unsupported by evidence and contradicted by Petitioners' personal histories. Anonymity is therefore warranted to prevent this litigation from becoming a self-defeating exercise.

## II. THE BALANCE OF EQUITIES FAVORS ANONYMITY

As courts in this District have recognized, the key inquiry in determining whether to permit pseudonymous litigation is whether a plaintiff's privacy interest outweighs the public's general right of access. "[T]he ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Roe v. Catholic Health Initiatives Colorado*, No. 11–cv–02179, 2012 WL 12840, at *5 (D. Colo. Jan. 4, 2012). Here, Petitioners' substantial privacy interests, including the highly personal nature of their immigration statuses and the substantial risk of harm should their identities be disclosed, far outweighs any minimal public interest in knowing their identity.

The government, by contrast, would suffer no prejudice. Petitioners are willing to provide their identities to the government, subject to protection against retaliation, and Petitioners will continue to cooperate with the Court as needed. *See Does I–V*, 2007 WL 684114, at *2 (finding no prejudice where plaintiffs disclosed their identities to the government and participated in discovery). Moreover, courts routinely permit pseudonymous filings in suits against the

7

government, recognizing that unlike private parties, government defendants are not vulnerable to reputational or economic harm simply by being named in litigation. *See Int'l Refugee Assistance Project*, 2017 WL 818255, at *3 ("Courts are more likely to permit plaintiffs to proceed under pseudonym when they are pursuing a claim against the government [because] although the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm."); *see also EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (noting that "[w]hen a plaintiff challenges governmental activity, for example, anonymity is more likely to be granted").

In contrast to Petitioners' heightened interest in confidentiality, the public's interest in knowing Plaintiff's identity is minimal. While the issues that Petitioners raise in this lawsuit are a matter of significant public concern, revealing Petitioners' identity will add little or nothing to the public's understanding of the lawfulness of the challenged government action.

Finally, the public interest in this case centers on the legality of the government's enforcement practices, not on the identities of the individuals raising the challenge. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068–69 (9th Cir. 2000) ("Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them."). Although the *issues* in this lawsuit are a matter of significant public concern because they involve government entities and actors, the *identities* of the Petitioners will add little to the public understanding of the case that is based purely on questions of law—i.e., the lawfulness of the Proclamation and its implementation by Respondents. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) ("[W]hether the defendants are governmental entities is significant because

8

a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual.")

Taken together, the equities strongly support pseudonymity. Petitioners are not asking this Court to seal proceedings or withhold public filings; they seek only the limited and temporary protection of proceeding under pseudonyms to avoid compounding the very harms they seek to redress.

## CONCLUSION

For all the reasons stated, Petitioners respectfully request that the Court grant them leave to proceed under their initials as a pseudonym and request all public filings and references to Petitioners in this litigation, including in exhibits, use their initials. The Court should also require the government to maintain their identities confidential and prohibit any retaliatory action.

Respectfully submitted this 12th day of April, 2025

*s/ Sara R. Neel*

_____
Sara R. Neel
Emma Mclean-Riggs
Anna I. Kurtz
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF COLORADO
303 E. 17th Avenue
Denver, CO 80203
(720) 402-3107
sneel@aclu-co.org
emcleanriggs@aclu-co.org
akurtz@aclu-co.org

Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*

9

Omar Jadwat
Hina Shamsi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
odjadwat@aclu.org
hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org

Tamara F. Goodlette
Laura P. Lunn
Monique R. Sherman
Rocky Mountain Immigrant Advocacy Network
tgoodlette@rmian.org
llunn@rmian.org
msherman@rmian.org

*Attorneys for Petitioners-Plaintiffs*
* *Attorney not admitted to the District of Colorado*

**CERTIFICATE OF CONFERRAL**

Counsel for Petitioners-Plaintiffs ("Petitioners") attempted to confer with counsel for Respondents-Defendants ("Respondents") by emailing the local U.S. Attorney's Office at 7:36 PM on April 12, 2025, and seeking their position. Petitioners' counsel was not able to obtain a response prior to filing.

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2025, I electronically filed the foregoing **MOTION FOR LEAVE TO PROCEED UNDER PSYDONYM** with the Clerk of the Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of record shall be served electronically through such filing.

*/s/ Sara R. Neel*

Sara R. Neel