**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-1163

D.B.U., *et al*.,

      Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,

      Respondents-Defendants.

---

### PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

### INTRODUCTION

A class action is appropriate for this challenge to Respondents-Defendants' ("Respondents") invocation of the Alien Enemies Act of 1798 ("AEA"). The President has invoked a war power, the AEA, in an attempt to summarily remove noncitizens from the United States and bypass the immigration laws that Congress has enacted. That invocation is patently unlawful: It violates the statutory terms of the AEA; unlawfully bypasses the INA; and infringes on noncitizens' constitutional right to Due Process under the Fifth Amendment.

Petitioners-Plaintiffs ("Petitioners") seek to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in custody in the District of Colorado who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

The proposed class readily satisfies the requirements of Rule 23.

Numerosity is present, as demonstrated by the number of people in the United States that the government has admitted having designated as subject to the AEA Proclamation. *See* Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying a total of 258 people in the United States who the government believes are TdA members). Additionally, many people who were, are, or will be designated as subject to the AEA Proclamation are detained and confined in the District of Colorado. The government has engaged in large-scale enforcement actions that it describes as targeting Tren de Aragua in the District.[1]

All class members suffer the same injury: unlawful removal under the AEA, unlawful denial of their statutory rights to the removal and detention procedures contained in the INA, and violation of their right to due process. And the class raises common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. The Petitioners' legal claims are typical of those whom they seek to represent. Petitioners are represented by experienced counsel with significant experience litigating class actions and cases involving the rights of noncitizens. And the proposed class satisfies Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class by summarily removing noncitizens without statutorily

---

[1] *See, e.g.,* Chase Woodruff, *ICE agents conduct operations in multiple Denver, Aurora locations*, Colorado Newsline (Feb. 5, 2025), https://coloradonewsline.com/2025/02/05/ice-operations-denver-aurora/ (ICE claiming that it was targeting "100+ members of the violent Venezuelan gang Tren de Aragua" in a Denver raid); Megan Ulu-Lani Boyanton, *As ICE claims it's ramped up immigration enforcement, the number of Colorado arrests, deportations is still unclear*, Denver Post (Mar. 13, 2025), https://www.denverpost.com/2025/03/13/ice-denver-immigration-raids-colorado-donald-trump/ (discussing ICE claims that it has detained members of Tren de Aragua in numerous actions in Colorado).

and constitutionally mandated safeguards. *See Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Shook v. Board of County Commissioners*, 543 F.3d 597, 604 (10th Cir. 2008). And, the class would be amenable to uniform group remedies, such as granting a writ of habeas corpus to Petitioners that enjoins Respondents from removing Petitioners pursuant to the Proclamation, declaring the Proclamation unlawful, and enjoining the Petitioners from applying the Proclamation without appropriate notice and opportunity to respond. *Id.*

The lack of notice to individuals and undersigned counsel reinforces why certification of a district-wide class is necessary in this case. While the government has identified hundreds of individuals who could be removed subject to the Proclamation, it has refused to disclose the identity and location of such individuals. Numerous people who have been removed pursuant to the Proclamation were detained and held in Colorado immediately prior to their deportation and incarceration at the CECOT mega-prison in El Salvador.[2] Proceeding with a district-wide class would thus serve the purpose of Federal Rule of Civil Procedure 23. *See* William B. Rubenstein, Newberg and Rubenstein on Class Actions, § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

The Court should grant class certification under Rule 23(b)(2), appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel. Alternatively, the Court can use Rule 23 as a guidepost to certify a class under principles of habeas jurisdiction and equity.

---

[2] *See, e.g.*, Barber Decl. ¶ 8 (attached as Ex. A to Petitioners' TRO Motion); Hightower Decl. ¶ 11 (attached as Ex. B to Petitioners' TRO Motion); Angeline McCall, *Venezuelan man from Colorado sent to Salvadoran prison without removal order or apparent criminal history*, 9News (Apr. 10, 2025), https://www.9news.com/article/news/politics/venezuelan-man-colorado-salvadoran-prison-removal-order/73-566817f3-0bf2-4f9f-b2c5-3f39708ac9db.

## BACKGROUND

### I.    President Trump's Proclamation Invoking the AEA

The background of this litigation is set forth in greater detail in Petitioners' simultaneously filed Habeas Petition and Complaint and Motion for a TRO. On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua* (Mar. 15, 2025).[3] Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *17 (D.C. Cir. Mar. 26, 2025); *J.G.G. v. Trump*, No. 25-cv-766-JEB, 2025 WL 890401, at *3 (D.D.C. Mar. 24, 2025).

Although the government has identified 86 people in detention subject to the Proclamation and 172 more who are at liberty, counsel for Petitioners are, by chance, aware of the identity and location of only a handful of individuals in the United States who are designated under the Proclamation, including four individuals in Texas and two others who were recently transferred back to New York. And Petitioners know of these individuals only because they have immigration counsel who were able to follow their clients' complicated transfers and contact undersigned counsel. Numerous people from Colorado designated under the Proclamation have already been disappeared into the infamous Salvadoran prison, CECOT. *See supra* n.3. Their families and legal

---

[3] *Available at*: https://perma.cc/ZS8M-ZQHJ.

4

counsel have not heard from them since. Many others in this District are facing the same irreparable, devastating outcome. *Id.*

## II.     Named Petitioners and the Proposed Class

The Petitioners are several noncitizens from Venezuela, accused of affiliation with Tren de Aragua, who are detained at ICE's Denver Contract Detention Facility in Aurora, Colorado. *See* ECF No. 1, Compl. passim.  Petitioners are representative of other noncitizens subject to the Proclamation under the Alien Enemies Act because they are in civil detention by ICE, have been accused of affiliation with Tren de Aragua, and are thus at risk of designation as alien enemies and removal based on the Proclamation.  The proposed class does not include individuals who may be removed pursuant to other authorities, such as the immigration laws.

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.*  As set forth below, Petitioners' proposed class satisfies all four of the Rule 23(a) requirements.

Class Petitioners also demonstrate below that Respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class,"

and therefore certification is appropriate under Rule 23(b)(2). *See Dukes*, 564 U.S.at 360; *see also Shook*, 543 F.3d at 604.[4]

## I.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

### A.  The Proposed Class is So Numerous That Joinder is Impracticable.

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). "There is no set formula to determine if the class is so numerous that it should be so certified." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014). In determining whether a proposed Class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002). Moreover, the determination turns not solely on the size of the proposed class, but on the facts of each case. *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D.N.M. 2007) (citing *Alvarado Partners, L.P. v. Mehta*, 130 F.R.D. 673, 675 (D. Colo. 1990)). There are "several factors that enter into the impracticability issue . . . includ[ing] the nature of the action, the size of the individual claims, and the location of the members of the class . . . that is the subject matter of the dispute." *Colo. Cross Disability Coal.*, 765 F.3d at 1215.

---

[4]  A habeas class may be maintained either under Rule 23 or in equity informed by Rule 23 principles. *See, e.g., Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975), *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *see also Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018); *Ibrahim v. Acosta*, 326 F.R.D. 696 (S.D. Fla. 2018).  The Tenth Circuit in *Napier v. Gertrude*, recognized that a court may use "an analogous procedure by reference to Rule 23 in proper circumstances," and "follow[ed] this course."  542 F.2d 825, 827 n.2 (10th Cir. 1976) (citing *Bijeol*, 513 F.2d at 967; *Sero*, 506 F.2d 1115).   Additionally, the Supreme Court has ruled on the merits in class habeas cases.  *See, e.g., Johnson v. Guzman Chavez*, 594 U.S. 523, 532 (2021); *Nielsen v. Preap*, 586 U.S. 392, 400 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 290 (2018).

Courts also consider the "financial resources of class members, and the ability of claimants to institute individual suits," as well as the "judicial economy arising from the avoidance of a multiplicity of actions." William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2017). In particular, the Tenth Circuit has acknowledged that because "[j]oinder of unknown individuals is certainly impracticable, . . . the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Colo. Cross Disability Coal.*, 765 F.3d at 1215 (quoting *Pederson v. La. State Univ.,* 213 F.3d 858, 868 n. 11 (5th Cir. 2000)); *see also* 32B Am. Jur. 2d Federal Courts § 1507 (the "fluid or fluctuating nature of a pool of prospective plaintiffs is a factor demonstrating the impracticability of joinder."). And where "only injunctive relief is sought, 'the requirements of numerosity often "relax."'" *Kurlander v. Kroenke Arena Co.*, LLC, 276 F. Supp. 3d 1077, 1086 (D. Colo. 2017) (quoting *Greater Los Angeles Agency on Deafness v. Reel Servs. Mgmt.*, No. CV 13-7172, 2014 WL 12561074 at *26 (C.D. Cal. 2014). "Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D. Colo. 1993); *see also Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 662 (D.N.M. 2016) (for purposes of Rule 23(a), "[i]mpracticable does not mean impossible." (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2nd Cir. 1993))). Because the numerosity requirement is a "fact-specific inquiry," this Court has "wide latitude" to determine if it is satisfied. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

The proposed class easily meets the numerosity requirement. Several weeks ago, the government identified 86 people in detention subject to the Proclamation and 172 more who are at liberty. *See supra*, Cerna Decl. ¶ 6. Based on the former number alone, Petitioners clear the

bar, but there are likely to be more individuals entering the class as more of the 172 individuals are taken into ICE custody. Moreover, Colorado in particular, has been an arrival point for Venezuelan newcomers and a focus of government investigation into alleged Tren de Aragua activity. Colorado has been subject to several large-scale enforcement actions the government describes as targeting Tren de Aragua. *See, e.g.*, *supra* n.2. These enforcement actions have resulted in the detention of many Venezuelans the government asserts are affiliated with Tren de Aragua, who face the imminent risk of removal to El Salvador. *See, e.g., supra* n.3. Recent government reports demonstrate that Venezuelans were the second most represented nationality among the 1100+ people held at the Aurora Facility in February 2025, and the third most in March 2025. *See, e.g., ICE Aurora Contract Detention Facility Accountability Report*, from the Office of Congressman Jason Crow, dated Feb. 3, 2025, https://crow.house.gov/sites/evo-subsites/crow.house.gov/files/evo-media-document/ICE%20Accountability%20Report%20-%202.3.25%20Final%20Draft.pdf-compressed.pdf; *ICE Aurora Contract Detention Facility Accountability Report*, from the Office of Congressman Jason Crow, dated March 17, 2025, https://crow.house.gov/sites/evo-subsites/crow.house.gov/files/evo-media-document/ice-accountability-report-3.17.25-final-draft-copy-2%29_0.pdf. Further, because ICE continues to "track[] the TdA members who are amenable to removal proceedings," *supra*, Cerna Decl. ¶ 6.,, and thus more individuals will be designated under the Proclamation, the class includes "unknown, unnamed future members," weighing in favor of certification. *Colo. Cross Disability Coal.*, 765 F.3d at 1215.

Joinder is impracticable not only because of the sheer numbers, but also because class members are frequently dispersed in different detention facilities prior to rapid staging for removal.

*See J.G.G.*, 2025 WL 914682, at *17; *J.G.G.*, 2025 WL 890401, at *3. Joinder is further impracticable given the nature of the class. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (stating that joinder may be impracticable in light of "fluidity" of custody, "the dispersion of class members across the country, and their limited resources"); *Chisholm v. Jindal*, No. 97-cv-3274, 1998 WL 92272, at *3 (E.D. La. Mar. 2, 1998) (finding joinder impracticable, "especially in light of the fact that [the putative class members] are indigent").

### B. Members of the Class Have Common Questions of Law and Fact.

The claims asserted by the proposed class include common questions of law and fact that satisfy Rule 23(a)(2).  At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The class claims must "depend upon a common contention . . . capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018). Commonality requires only a single issue common to the class, *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999), and factual differences between class members' claims do not defeat certification where common questions of law exist, *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). "Whether a case should be allowed to proceed as a class action involves intensely practical considerations . . . . Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations." *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (quoting *Monreal v. Potter,* 367 F.3d 1224, 1238 (10th Cir. 2004)).

Petitioners in this case have identified a "single policy, custom, procedure or alleged administrative deficiency" that "unites the claims of the plaintiffs or the putative class members," –the unlawful removal of noncitizens under the AEA—that provides the basis for every class member's injury. *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 2006 WL 1801379, at *9 (D. Colo. June 28, 2006), *aff'd sub nom. Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597 (10th Cir. 2008)." In addition to this common injury, numerous questions are common to the proposed class: whether the removals go beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory immigration removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge Petitioners' removal violates the AEA and Fifth Amendment. Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *J.B.*, 186 F.3d at 1288. And while class members may present individualized defenses to their designation as alien enemies, such potential differences do not destroy commonality for purposes of Rule 23(a)(2). *DG*, 594 F.3d at 1195.

Answering any one of these common legal questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Should the Court agree that Respondents cannot lawfully remove noncitizens under the AEA because there has, for instance, been no "invasion or predatory incursion" by a "foreign government or nation," all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Respondents from conducting the removals. Should the government's use of the AEA be upheld by this Court and on appeal, should one be taken, then at that point individual habeas actions may be needed to address whether any given detainee is, on the particular facts, a TdA member who falls with the

Proclamations. But at this stage, a class action is the appropriate means of addressing the threshold systemic issues that affect all of the class members.

### C. The Petitioners' Claims Are Typical of Class Members' Claims.

Petitioners here have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 223 (D. Colo. 2024). The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1198-99.

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–158, n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge"). Each proposed class member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA), which is unlawful as to the entire class because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners thus share an identical interest in invalidation of Respondents' implementation of removals pursuant to the Proclamation. Moreover, as with commonality, any

factual differences that might exist here between Petitioners and proposed class members are not enough to defeat typicality.

**D. Petitioners and Petitioners' Counsel Will Adequately Protect The Interests Of The Proposed Class.**

Petitioners and undersigned counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other proposed class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002).

Here, there are no differences that create conflicts between the named Petitioners' interests and the class members' interests. Petitioners will fairly and adequately protect the interests of the proposed class. Petitioners do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Petitioners aim to secure relief that will protect them and the entire class from Respondents' challenged policy and to enjoin Respondents from further violations. Petitioners have no incentive to deviate from this class relief. Nor do Petitioners seek financial gain at the cost of absent class members' rights.

In addition, proposed class counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Galindo Decl. ¶¶ 1-11. As the declaration makes clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens. *See, e.g.*, *id.*

12

## II.      THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). Petitioners here seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

As courts in the Tenth Circuit have recognized, "the (b)(2) class action was invented for the purpose of facilitating civil rights suits, and much of its use is in that field today." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, CIV 12-0039 JB/SCY, 2025 WL 950473, at *29 (D.N.M. Mar. 28, 2025) (citing William B. Rubenstein, *Newberg on Class Actions* § 4:26 (5th ed.)); *see also Newberg on Class Actions*, *supra*, § 1:3 (Rule 23(b)(2) "is typically employed in civil rights and other cases where monetary relief is not the primary remedy. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit"). Thus, courts in the Tenth Circuit have certified under Rule 23(b)(2) similar classes of individuals in custody or subject to immigration-related policies. *See, e.g.*, *Martinez v. Reams*, 20-CV-00977-PAB-SKC, 2021 WL 603054, at *5 (D. Colo. Feb. 16, 2021) (certifying 23(b)(2) class of present and future medically vulnerable inmates in county jail during COVID-19 pandemic); *Skinner v. Uphoff*, 209 F.R.D. 484, 489 (D. Wyo. 2002) (conditionally certifying 23(b)(2) class seeking systematic declaratory and injunctive relief against prison policies, practices, and customs purportedly violating constitutional rights of present and future inmates). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation and attempting to summarily remove them without complying with the AEA, INA and due process. *DG*, 594 F.3d at 1201 ("[C]ertification is appropriate even if the defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." (quoting Fed. R. Civ. P. 23(b)(2), 1966 Amendment advisory committee note). Here, the proposed class is sufficiently cohesive because the requested classwide injunctive relief would satisfy Rule 65(d)'s requirement that every injunction "state its terms specifically; and describe in reasonable detail ... the act or acts restrained or required," and because class members' injuries are "sufficiently similar" that they can be remedied in a single injunction without differentiating between class members. *Id.* Here, Petitioners seek injunctive and declaratory relief that would benefit them as well as all members of the proposed class in the same fashion.

The class is exactly the kind of class that Rule 23(b)(2) is meant to embrace. The class's interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class are in detention, often lack immigration counsel, and are indigent; they may also be detained in various facilities across the country and are therefore very unlikely to bring their own individual suits. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal

litigation, especially as the government has already announced its plans to swiftly deport people before they have the opportunity to seek judicial intervention.

## CONCLUSION

The Court should grant a TRO as to the named Petitioners and the class.

Respectfully submitted this 12th day of April, 2025.

*s/ Sara R. Neel*

_____

Sara R. Neel
Emma Mclean-Riggs
Anna I. Kurtz
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF COLORADO
303 E. 17th Avenue
Denver, CO 80203
(720) 402-3107
sneel@aclu-co.org
emcleanriggs@aclu-co.org
akurtz@aclu-co.org

Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
odjadwat@aclu.org
hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org

Tamara F. Goodlette
Laura P. Lunn
Monique R. Sherman
Rocky Mountain Immigrant Advocacy Network
tgoodlette@rmian.org
llunn@rmian.org
msherman@rmian.org

Attorneys for Petitioners-Plaintiffs
* Attorney not admitted to the District of Colorado

## __Certificate of Conferral__

Counsel for Petitioners-Plaintiffs ("Petitioners") attempted to confer with counsel for Respondents-Defendants ("Respondents") by emailing the local U.S. Attorney's Office at 7:36 PM on April 12, 2025, and seeking their position. Petitioners' counsel was not able to obtain a response prior to filing.

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2025, I electronically filed the foregoing

**PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** with the Clerk

of the Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel

of record shall be served electronically through such filing.

*/s/ Sara Neel*

_____

Sara Neel