IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 25-cv-01163-CNS

D.B.U, and
R.M.M., on behalf of themselves and others similarly situated,

    Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
PAMELA BONDI, Attorney General of the United States, in her official capacity,
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity,
U.S. DEPARTMENT OF HOMELAND SECURITY,
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity,
MARCO RUBIO, Secretary of State, in his official capacity,
ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity, and
DAWN CEJA, Warden, Denver Contract Detention Facility, in her official capacity,

    Respondents-Defendants.

---

**RESPONSE TO PETITIONERS-PLAINTIFFS'
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

---

In accordance with the Court's Order, ECF No. 10, Respondents, in their official capacities, respond to Petitioners-Plaintiffs' Emergency Motion for Temporary Restraining Order, ECF No. 2 ("TRO Motion") (filed April 12, 2025).

## INTRODUCTION

Petitioners are two Venezuelan men in immigration custody who seek an order enjoining their removal under the Alien Enemies Act, 50 U.S.C. §§ 21-24 ("AEA"). ECF No. 1 at ¶ 1 ("Petition"). Each expresses a concern that he faces a risk of removal under the AEA based on a Proclamation issued by the President invoking the AEA as a basis for apprehension, detention, and removal of certain individuals who are members of Tren de Aragua ("TdA"). *See* Proclamation No. 10,903, 90 Fed. Reg. 13,033 (Mar. 20, 2025) ("Proclamation"). In their TRO Motion, they seek emergency relief based on the same premise: that they are in imminent danger of being removed from the United States "pursuant to the use of the Alien Enemies Act…." ECF No. 2 at 1.

As explained below, before Petitioners filed this case, U.S. Immigration and Customs Enforcement ("ICE") had assessed them, through a process it uses in implementing the Proclamation, to determine whether they are subject to the Proclamation. Based on the information available at that time, ICE's assessment was that they are not covered by the Proclamation. Petitioners are thus not subject to the Proclamation or detained pursuant to it. And they have not been issued a notice that they will be removed under it.

This Court thus lacks jurisdiction over this habeas proceeding. A challenge to removal under the AEA may proceed only in habeas. And a habeas proceeding may

2

proceed only where the petitioner is in custody—facing a restraint on liberty—pursuant to the order being challenged. Here, Petitioners are not in custody or facing removal under the Proclamation or the AEA. The Court should deny their TRO Motion, vacate its orders that have granted that Motion in part, and dismiss without prejudice for lack of jurisdiction.

## BACKGROUND

### A.  The Proclamation, and the individuals covered by it

The AEA, 50 U.S.C. §§ 21-24, provides the President with authority to issue a "proclamation" identifying an invasion or predatory incursion by a foreign nation or government, and it provides that subjects of the hostile nation or government "shall be liable to be apprehended, restrained, secured, and removed as alien enemies." 50 U.S.C. § 21. On March 14, 2025, the President, invoking and exercising his authority under the AEA, signed the Proclamation. 90 Fed. Reg. at 13,034.

In the Proclamation, the President found that TdA, a designated Foreign Terrorist Organization, is a "hybrid criminal state" that "is perpetrating, attempting, and threatening an invasion or predatory incursion against the territory of the United States." *Id.* at 13,033-34. The President found that TdA is "closely aligned with" Maduro's regime in Venezuela, has "infiltrated" the regime's "military and law enforcement apparatus," and (along with other criminal organizations) has taken control over Venezuelan territory while "Venezuelan national and local authorities have ceded ever-greater control over their territories." *Id*. The President also found that TdA, which "commits brutal crimes" including murder and kidnapping, is "conducting irregular warfare and undertaking hostile actions against the United States," and "supporting the Maduro regime's goal of

3

destabilizing democratic nations … including the United States." *Id*.

Based on those findings, the President, exercising his authority under the AEA, proclaimed that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies" under 50 U.S.C. § 21. *Id*. at 13,034. Any such TdA member found within the United States is "subject to summary apprehension." *Id*. at 13,035.

**B.    ICE's review of whether Petitioners are covered by the Proclamation**

Petitioners are each in the custody of ICE at the Contract Detention Facility in Aurora, Colorado. *See* Valdez Decl., Ex. 1, at ¶ 6. Each has been placed in removal proceedings under the Immigration and Nationality Act ("INA") before an immigration judge. *Id*. at ¶¶ 10-12, 18-20.

ICE's Assistant Field Office Director with authority over the Contract Detention Facility has confirmed that, prior to the filing of this case, Petitioners had been reviewed through ICE's process to determine whether they are subject to the Proclamation and, based on the information available at that time, were not identified by ICE as being subject to the Proclamation. *Id*. at ¶¶ 13, 21, 24.[1]

**C.    The process for seeking review of removal under the AEA**

The Supreme Court recently held that individuals facing removal under the AEA

---

[1]    In the Petition, one Petitioner refers to a "Form I-213"—a document completed by ICE based on information gathered in an initial encounter with an alien—identifying him as a TdA member. ECF No. 1 at ¶ 12. But a Form I-213 is not a determination by ICE that an individual is subject to the Proclamation. Ex. 1 ¶ 24. The determination that an individual is subject to the Proclamation is made by ICE through a different process. *Id*.

4

have due process rights and must receive notice that they face removal under the AEA, as well as an opportunity to seek habeas relief. *See Trump v. J.G.G.*, 604 U.S. ___, 2025 WL 1024097 (U.S. Apr. 7, 2025). In *J.G.G.*, detained Venezuelan nationals "believed to be members of Tren De Aragua" sought to prevent their removal under the AEA. *Id*. at *1. The Court held that individuals subject to removal under the AEA are entitled to notice and an opportunity to be heard under the Fifth Amendment's Due Process Clause. *Id*. at *2. "AEA detainees must receive notice after the date of this order that they are subject to removal under the Act." *Id.* That "notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.*; *see also id*. ("The Government expressly agrees that 'TdA members subject to removal under the Alien Enemies Act get judicial review.'").

In accordance with the decision in *J.G.G.*, the government has developed procedures for AEA detainees newly subject to the Proclamation. *See* Elliston Decl., Ex. 2, ¶ 7. Under those procedures, an alien whom the government determines is subject to be removed as an alien enemy will receive individual notice of that determination. *Id*. ¶ 8. The notice will be provided to the alien in a language that the alien understands. *Id*. And the notice will allow the alien a reasonable time to file a petition for a writ of habeas corpus. *Id*. Here, neither Petitioner has been issued any notice that they are subject to the Proclamation and will be removed under the AEA. Ex. 1 at ¶¶ 14, 22.

5

**D.     The Petition and TRO Motion**

In the Petition, ECF No. 1, the two[2] Petitioners, *id*. at ¶¶ 11-12, present eight claims, all objecting to their removal based on the premise that the Proclamation applies to them and that they are thus facing removal under the AEA.  *Id*. at ¶¶ 68-98.

In their TRO Motion, "Petitioners contend that the Proclamation is invalid under the AEA for several reasons."  ECF No 2 at 4, 11-20.  They seek an order "barring their summary removal under the AEA and barring Respondents from relocating them outside of this District pending this litigation."  *Id*. at 4.

**E.     The Court's Orders**

The Court has already granted the relief sought in the TRO Motion, in part.  On April 14, 2025, the Court issued a Minute Order stating, as relevant here, that "Defendants SHALL NOT REMOVE Petitioners from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order."  ECF No. 10 (emphasis in original).  The Court then granted an Emergency Motion to Clarify and stated, in relevant part, "The order issued by the Court at ECF No. 10 prohibits the removal from this jurisdiction of Petitioners and the class they propose to represent; namely, 'All noncitizens in custody in the District of Colorado who were, are, or will be subject to the March 2025 Presidential Proclamation… … and/or its implementation.'  This

---

[2]     The Petition is filed by only these two Petitioners, as distinct from the putative class that they have filed a separate motion to represent.  *See* ECF No. 1 at ¶¶ 11-12 (identifying the "Parties" and identifying as "Petitioners" just D.B.U. and R.M.M., not the putative class).  This distinction—between the two Petitioners and the putative class—is similarly reflected in Petitioners' still-pending Motion for Class Certification.  ECF No. 4 at 5 (distinguishing between "Named Petitioners and the Proposed Class").

order shall remain in effect for no longer than fourteen (14) days . . . ." ECF No. 14.

## ARGUMENT

The TRO Motion should be denied. This Court lacks jurisdiction because Petitioners are not being detained under the AEA, nor are they facing removal under it. Even if the Court did have jurisdiction, the law limits this Court's review under the AEA, as well as its authority to grant the relief sought, and supports denying the TRO Motion.

### I. Motions for emergency injunctive relief must meet high standards.

Emergency injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Petitioners must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Id*. at 20. The latter two elements "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A movant's right to relief must be "clear and unequivocal," *McDonnell v. City & Cnty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018) (cleaned up), especially here, where Petitioners seek to restrain actions taken by the President to meet foreign-policy objectives. *Cf. Sampson v. Murray*, 415 U.S. 61, 83–84 (1974) (rejecting the application of "traditional standards governing more orthodox 'stays'" in an area in which "the Government has traditionally been granted the widest latitude").

### II. This Court lacks jurisdiction over this case.

While Petitioners filed this case as both a habeas proceeding and a civil action, it

can proceed, if at all, in habeas.  The Supreme Court held in *J.G.G.* that the sole avenue for a person challenging removal under the AEA is in habeas.  *See J.G.G.*, 2025 WL 1024097, at *1 ("Challenges to removal under the AEA … must be brought in habeas").  Such challenges must proceed in habeas "[r]egardless of whether the detainees formally request release from confinement, because their claims for relief necessarily imply the invalidity of their confinement and removal under the AEA...."  *Id*. (cleaned up).

Petitioners do identify the habeas statute, 28 U.S.C. § 2241, as a basis of jurisdiction.  ECF No. 1 at ¶ 8.  Section 2241 permits an action by a person "in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

Petitioners challenge their removal under the Proclamation, arguing that removal under the Proclamation and the AEA would be unlawful.  *See generally* ECF No. 1.  But Petitioners are not facing removal under the Proclamation or the AEA.  Before they filed the Petition, ICE had determined, through its review process based on current information, that Petitioners are *not* subject to the Proclamation.  Ex. 1 ¶¶ 13-14, 21-22.  They are thus not currently in detention or being removed under the AEA.  *Id.*

As a result, this Court lacks jurisdiction over this habeas proceeding.  The Supreme Court has held that a court can exercise habeas jurisdiction only where the petitioner challenges a basis for the petitioner's custody.  *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (holding that the statutory "in custody" language requires that the habeas petitioner, at the time his petition is filed, be in custody under the conviction or sentence the petitioner is attacking).  In *Maleng,* the Court held that the mere "possibility" that an order of conviction will result in future custody is not enough to serve as a basis for habeas

8

jurisdiction. *Id*. at 492 (a habeas petitioner is not "in custody" for purposes of habeas jurisdiction under a conviction "after the sentence imposed for it has fully expired, merely because of *the possibility* that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted") (emphasis added). While *Maleng* addressed a habeas petition filed under 28 U.S.C. § 2254, "this 'in custody' requirement appears in both §§ 2241(c)(3) and 2254(a)." *Alaska v. Wright*, 593 U.S. 152 (2021) (applying *Maleng* to a habeas petition filed under both § 2241 and 2254).

Since *Maleng*, the Tenth Circuit has recognized that habeas petitions must be dismissed for lack of jurisdiction where the petitioner seeks to challenge a conviction that is not a basis of the petitioner's restraint on liberty. *See Mays v. Dinwiddie*, 580 F.3d 1136, 1141 (10th Cir. 2009) (affirming dismissal of habeas petition and explaining that "like the petitioner in *Maleng*, Mr. Mays suffers no present restraint from [the burglary] conviction.' … He therefore cannot establish that he is in custody on that conviction."); *Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) ("To the extent that Mr. Davis raises a claim challenging the execution of his 1991 sentence, the district court lacked jurisdiction to hear the claim because he was no longer in custody under that sentence when he filed for relief in that court"; affirming dismissal of petition filed under § 2241).

This principle accords with the Supreme Court's broader recognition that a district court cannot exercise habeas jurisdiction under § 2241 based on events that have not in fact occurred. *See Rumsfeld v. Padilla*, 542 U.S. 426, 448 (2004) ("The dissent cites no authority whatsoever for its extraordinary proposition that a district court can exercise statutory jurisdiction based on a series of events that did not occur, or that jurisdiction

9

might be premised on 'punishing' alleged Government misconduct.").

Because ICE has determined that Petitioners are not subject to the Proclamation and is not holding them in detention or removing them under the Proclamation or the AEA, the Court lacks habeas jurisdiction over this case challenging removal under the AEA.

### III.     Other principles also bar review of Petitioners' AEA challenges.

Because this Court lacks jurisdiction, it may not consider Petitioners' challenges to the lawfulness of removal under the AEA.  But even if this Court were to exercise habeas jurisdiction, several other limitations on judicial review would still bar this Court from reviewing Petitioners' AEA arguments in the TRO Motion.

As an initial matter, Petitioners' arguments in the TRO Motion are speculative and thus premature and unripe for review.  They rest on concerns about how the Proclamation might be applied to them in the future and whether they would be permitted to assert various procedural rights in some future proceeding.  They raise concerns that any notice that might be issued to them might not comply with due process, ECF No. 2 at 16-17, or that the ensuing process then might deprive them of other relief (asylum, withholding of removal, or protection under the Convention Against Torture) that they might be seeking to pursue at that point, *id*. at 17-18, or that the process might also violate other procedural rights, *id*. at 19-20.  But this Court may not exercise jurisdiction based on speculation that Petitioners will be determined to be subject to the Proclamation, then be deprived of the rights they claim, and then be denied an opportunity to raise those arguments in a habeas proceeding.  Federal courts cannot issue relief based on mere speculation about a potential future procedural harm.  *Cf. Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (no

10

standing to challenge threatened injury absent showing of a "concrete, particularized, and actual or imminent" harm); *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013) (no relief for threatened injury absent a showing of "future harm" that is "certainly impending").

In addition, some of Petitioners' arguments seek to require this Court to review—and to reject—the President's findings and determinations supporting the Proclamation, including the President's determination that TdA's actions render its members alien enemies under the AEA. ECF No. 2 at 12-16. Several limiting principles should lead this Court to not consider Petitioners' request for such review at this stage.

First, the President "has important foreign relations responsibilities: [including] . . . recognizing foreign governments . . . overseeing international diplomacy and intelligence gathering, and managing matters related to terrorism . . . and immigration." *Trump v. United States*, 603 U.S. 593, 607 (2024). For example, the power to recognize foreign states and governments, including the territorial bounds of those foreign states, "resides in the President alone." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 28 (2015). And the Supreme Court has long recognized that courts cannot issue an injunction purporting to supervise the President's performance of his duties. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867) (courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties"); *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him.").

Second, the law limits the power of courts to review the President's exercise of his authority under the AEA. *See, e.g., Ludecke v. Watkins*, 335 U.S. 160 (1948). In *Ludecke*, the Court upheld the "[d]enial of a writ of habeas corpus" sought by an individual

detained under the AEA, explaining that "some statutes 'preclude judicial review'" and that "[b]arring questions of interpretation and constitutionality, the Alien Enemy Act of 1798 is such a statute." *Id*. at 163-4 (citations omitted). The Court concluded, for example, that the President's decision to remove only those enemy aliens "deemed by the Attorney General to be dangerous" was not a "judicially reviewable action," and that the exercise of AEA powers based on a "state of war" even after the "cessation of actual hostilities" was a "matter[] of political judgment for which judges have neither technical competence nor official responsibility." *Id*. at 165-70.

Third, the President's findings that the AEA's preconditions are satisfied is a political question. Those findings are committed to the President's discretion, no different from the President's determination to trigger the Constitution's Invasion Clause (Article IV, section 4). *Cf. Padavan v. United States*, 82 F.3d 23, 28 (2d Cir. 1996) (holding plaintiffs' Invasion Clause claim nonjusticiable). This limit on judicial review is constitutional in nature, as the political-question doctrine is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

The Proclamation implicates multiple factors sufficient to show that the President's actions are protected by the separation of powers. The President's finding of an "invasion" or "predatory incursion" involves two areas the Constitution commits to the political branches: (1) foreign affairs, *see Barclays Bank PLC v. Franchise Tax Bd.*, 512 U.S. 298, 327–28 (1994); and (2) immigration policy, *see Mathews v. Diaz*, 426 U.S. 67, 81 (1976). In addition, courts lack manageable standards to second-guess the President's judgment that such an "invasion" or "predatory incursion" is occurring. *See*

*Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports neither are nor ought to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret.").

All these principles constraining or precluding judicial review of the President's foreign policy and immigration judgments further support declining Petitioners' request for this Court to review those judgments—particularly in a proceeding where Petitioners seek to challenge a Proclamation that is not even the basis of their detention or removal.

**III.  The INA deprives the Court of authority to enjoin Respondents from transferring Petitioners or putative class members outside the district.**

Another reason that the TRO Motion should be denied is that it seeks relief that this Court cannot grant. The INA deprives this Court of authority to bar Respondents from transferring Petitioners, or a putative class of other individuals, outside this district. This Court should thus deny the TRO and vacate its Minute Orders, which are overbroad to the extent they restrain the government from transferring aliens detained under the INA.

Petitioners here are detained not under the AEA, but under the INA. Ex. 1 ¶¶ 11, 19. In general, the INA authorizes the government to detain aliens pending removal proceedings under 8 U.S.C. § 1226(a) and removable aliens under § 1231(a). The government must detain certain aliens who are inadmissible or removable under certain provisions. *See id*. §§ 1226(c)(1), 1231(a)(2)(A).

During detention, the INA prohibits courts from entering injunctive relief with respect to transfers. First, the INA deprives courts of the authority to review discretionary

13

decisions as to where to detain aliens.  8 U.S.C. § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter[1] to be in the discretion of the Attorney General."  Section 1252(a)(2)(B) bars review of discretionary decisions "when Congress itself set out the Attorney General's discretionary authority in the statute."  *Kucana v. Holder*, 558 U.S. 233, 246 (2010).

That limitation on review applies to discretionary decisions about where to detain an alien.  In *Van Dinh v. Reno*, the Tenth Circuit held that Section 1252(a)(2)(B)(ii) precluded a district court, in a class action suit, from "restrain[ing] the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief…."  197 F.3d 427, 433 (10th Cir. 1999).  The *Van Dinh* court explained that 8 U.S.C. § 1231(g)(1)—which states in part that "the Attorney General shall arrange for appropriate places of detention for aliens detained pending removal"—provided "[t]he Attorney General[] discretionary power to transfer aliens from one locale to another, as she deems appropriate."  197 F.3d at 433.  The court concluded that "[b]ecause the discretionary decision to transfer aliens from one facility to another and the correlative discretionary decision to grant or deny relief from such a transfer is a 'decision . . . under this subchapter,' judicial review of that decision is expressly barred by § 1252(a)(2)(B)(ii)."  *Id*. at 434 (citations omitted).

This limitation on review of a decision where to detain an alien is further supported by another INA provision, Section 1252(g), which provides that "no court shall have jurisdiction" to consider a challenge to any decisions to "commence [removal]

proceedings." Section 1252(g)'s broad language precludes a challenge to the government's decision as to where a detainee may be placed during removal proceedings. *See Tercero v. Holder*, 510 F. App'x 761, 766 (10th Cir. 2013) (concluding that sections 1231(g) and 1252(g) barred review in a habeas petition of the decision regarding where to detain the alien petitioner).

Second, this Court has also restrained the transfer of a putative class of other individuals, even including those who "were" or "will be"—but are thus, in fact, *not*— determined to be subject to the Proclamation and detained under the AEA. ECF No. 14. But the INA deprives this Court of jurisdiction "to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–32 (which includes 1231(g), the basis for deciding where aliens should be detained) "other than with respect to the application of such provisions to an individual alien…." 8 U.S.C. § 1252(f)(1) (emphasis added). "§ 1252(f)(1) prohibits federal courts from granting classwide injunctive relief but does not extend to individual cases." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (internal quotation marks omitted). Thus, even if this Court could exercise jurisdiction over the putative class, Section 1252(f)(1) deprives the Court of authority to grant the classwide relief it granted.

**IV.    The remaining factors support denying the TRO Motion.**

The balance of harms and the equities strongly favor the government here. An injunction is unnecessary to protect Petitioners. ICE determined, based on the information available, that Petitioners are not subject to the Proclamation or the AEA. Even if they were, the government has committed to providing individuals subject to the Proclamation the process they are due—reasonable notice and opportunity to seek relief

through habeas corpus.  See *J.G.G.*, 2025 WL 1024097, at *2 ("The Government expressly agrees that 'TdA members subject to removal under the Alien Enemies Act get judicial review.'"); Ex. 2 ¶ 8.

A TRO, on the other hand, would impede the government's ability to enforce the immigration laws and to arrest, detain, and remove unlawfully present aliens who may pose a danger to the public, such as TdA members.  See, e.g., *Nken*, 556 U.S. at 436 (noting that there "is always a public interest in prompt execution of removal orders," and that interest "may be heightened" where "the alien is particularly dangerous").

A TRO would also irreparably harm the United States' conduct of foreign policy.  It would usurp the President's statutory and constitutional authority to address what he has identified as an invasion or predatory incursion.  See *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (warning of "the danger of unwarranted judicial interference in the conduct of foreign policy").  The Executive Branch's protection of these interests, including "sensitive and weighty interests of national security and foreign affairs" inherent to combating terrorist groups, warrants the utmost deference.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-35 (2010).[3]

## CONCLUSION

The Court should deny the TRO Motion, vacate its Orders to the extent they already granted that Motion in part, and dismiss this proceeding without prejudice for lack of jurisdiction.

---

[3]   If the Court were to grant the TRO Motion, it should require security.  See Fed. R. Civ. P. 65(c).

Dated: April 17, 2025

Respectfully submitted,

J. BISHOP GREWELL
Acting United States Attorney

s/Kevin Traskos_____
**Kevin T. Traskos**
Chief, Civil Division
Assistant U.S. Attorney
1801 California St., Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Kevin.traskos@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 17, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

Sara R. Neel, sneel@aclu-co.org
Timothy R. MacDonald, tmacdonald@aclu-co.org
Emma K. McLean-Riggs, emcleanriggs@aclu-co.org
Anna I. Kurtz, akurtz@aclu-co.org
Omar C. Jadwat, ojadwat@aclu.org
Lee Gelernt, lgelernt@aclu.org

Counsel for Petitioners D.B.U and R.M.M.

and I certify that on the same date I am causing the foregoing to be delivered to the following non-CM/ECF participants in the manner (mail, email, hand delivery, etc.) indicated by the nonparticipant's name:

None.

s/Kevin Traskos
**Kevin T. Traskos**