# Exhibit I

## **APRIL 25, 2025 DECLARATION OF MONIQUE R. SHERMAN**

I, Monique R. Sherman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am the Detention Program Managing Attorney at the Rocky Mountain Immigrant Advocacy Network ("RMIAN"), the only nonprofit legal services provider for people at the Denver Contract Detention Facility ("Denver facility"), where Immigration and Customs Enforcement ("ICE") detains people in Colorado. As of March 17, 2025, the facility held 1,243 people, according to government reporting. At that time, the nationality with the third largest population within the Denver facility was Venezuelan.

2. RMIAN staff have met at the Denver facility with many of the people arrested in ICE raids in Denver and Aurora in late 2024 and early 2025, as well as in individual apprehensions in the community since then.  Many individuals were accused by ICE of being members of Tren de Aragua ("TdA") at the time of their apprehension or shortly thereafter. Most, but not all, are Venezuelan.

3. ICE has transferred outside of Colorado a number of those accused of TdA membership. For example, one man with ongoing removal proceedings before the Aurora Immigration Court was transferred from Denver to Arizona on April 11, the day after ICE photographed his alleged TdA tattoos. While he was in Arizona, the ICE detainee locator stated, "call field office" for location. For years, RMIAN staff have observed that when the ICE locator identifies the location as "call field office" that is an indication the person is being processed for removal from the United States. Based on that location indicator, we believed that he was being processed for removal from the United States.  He was returned to the Denver Facility on April 22, shortly after this Court's TRO issued on April 14, and one day after oral argument on the TRO.

4. In another instance, on April 10, ICE officials asked a Venezuelan man who had been accused of TdA membership to sign an English-only form. He asked to have an opportunity to review the form in Spanish with an attorney. The ICE officers refused and became angry. They told the man that his case was over, that his hearings had been canceled, and that he would be deported on a special plane according to "a new law of President Trump." The man refused to sign but was moved out of the Denver facility the next day anyway. He was transferred to Louisiana, to Arizona, and on April 22, he was transferred back to Colorado, just one week after this Court's April 14 order granting the TRO.

5. These abrupt transfers despite ongoing proceedings are consistent with our prior experience in which at least 11 people in the Denver facility were abruptly transferred to other states, then sent to CECOT on March 15.

6. Transfers from the Denver facility disrupt the ability for attorneys to communicate with their clients, impede access to counsel, limit communication with family, and severely inhibit the ability to seek any relief through a writ of habeas corpus, should clients be designated under the Alien Enemies Act. Typically, when someone is transferred out of the Denver facility, they are not able to speak to counsel for several days, and often longer. Moreover, attorneys

    in Colorado may not be admitted to file habeas petitions in the districts where their clients are transferred.

7. Even individuals who remain at the Denver facility struggle to file habeas petitions. Eighty-five percent (85%) of people in ICE custody at the Denver facility do not have an attorney to help them draft a habeas petition. Pro se individuals would need to know basic information about how and where to file. And pro se people can only file a habeas petition through the mail because there is no access to the internet to file documents online. People who are unable to afford postage would need to obtain stamps from the facility to send legal mail. Mail processing out of the Denver facility is slow—mail regularly takes over a week from posting at the facility to arrive at our office.

8. In the past year, only 16 immigration habeas petitions have been filed before the District of Colorado. Only five petitioners were pro se. During that same period, RMIAN provided an initial orientation and legal information to 1,957 people, meaning that only approximately .0025 of people who had the opportunity to learn about their rights successfully filed a pro se petition for habeas corpus.

9. Under the Notice the government disclosed on April 24, 2025 (ECF 44) the fact that individuals can make one phone call does little to help. People detained in ICE custody have to pay to make outgoing calls, even to attorneys, and many people do not have any money in their commissary accounts to do so. RMIAN only has capacity to check messages on its free hotline (the only available free hotline) once a day. On average it currently takes RMIAN three weeks to contact individuals who reach out via the hotline. If an individual is provided 24 hours or less notice from the government, there will be no opportunity for them to consult with an attorney.

10. The federal government terminated funding for the Legal Orientation Program ("LOP") which caused our staff to have extremely reduced access to people held in the facility. Before the government cut the funding, we were able to conduct presentations that reached about 30 people at a time and conduct several intakes during a given visit. We are now lucky if we can speak to 4-5 people during a visit. Even if the LOP were restarted, habeas is not one of the approved topics to cover in an LOP session.

11. Language access at the facility has been a continuing problem for a long time. There have been many dozens of reports to our staff from individuals that ICE provided them documents in English and there was no interpreter provided to read the document or to explain it.

Executed this 25th of April 2025.

                                                    */s/ Monique R. Sherman*  
                                                          Monique R. Sherman  
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK  
7301 Federal Boulevard, Suite 300  
Westminster, Colorado 80030  
(720) 738-3220  
msherman@rmian.org