# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-1163-CNS

D.B.U. *et al.*,

    Petitioners-Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

    Respondents-Defendants.

**REPLY IN SUPPORT OF PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Petitioners present a textbook Rule 23(b)(2) class because every class member has a number of identical legal claims against the Alien Enemies Act ("AEA") Proclamation, and if they prevail, each one without exception would be entitled to the exact same order enjoining the Proclamation's enforcement. In opposing class certification, Respondents make several critical concessions: The government (grudgingly) concedes that there is one issue "common to all AEA detainees"—the "lawfulness of the Proclamation under the AEA." Opp. 15[1]; *see also* Opp. 13 ("determination as to the Proclamation's compliance with the AEA might in theory generate a common answer"). Petitioners thus satisfy commonality and the Rule 23(b)(2) standard since a single injunction would eliminate every class member's injuries in one fell swoop. The government does not contest numerosity or the scope of the class. It also acknowledges that the named Petitioners could be subject to the Proclamation. Opp. 12. In fact, the government never disputes that it has labeled both named Petitioners as associates or members of Tren de Aragua ("TdA") in their immigration proceedings. Thus, Respondents' arguments against typicality and adequacy fall flat because Petitioners have presented sufficient evidence that they are at imminent risk of removal pursuant to the Proclamation, and thus have every incentive to challenge it.

The imminent threat is especially true now that the government has revealed that it is providing only 12 hours' notice of AEA designation ahead of removal and, if the person indicates their intent to file a habeas petition, only 24 hours to file that petition. ECF No.

---

[1] "Opp." refers to Respondents' response in opposition to Petitioners' motion for class certification, ECF No. 46.

44-1 (Cisneros Decl.) ¶ 11. Moreover, not only is the government providing a mere 12 hours, but it is using a notice form that is written in English and that provides no information about whether a detainee can contest their designation, how to do so, or on what timeframe. *Id*. at 6 (AEA-21B Form). These deficient notice protocols guarantee that if noncitizens in this District were forced to proceed in individual habeas petitions, the vast majority, who do not have their own attorneys or ready access to one, would never obtain judicial review. *See* ECF No. 45-10 (Sherman Decl.) ¶¶ 7-11.

Alternatively, if the Court chooses, it can (as the government recognizes) certify a habeas class in equity informed by Rule 23 principles but not directly under Rule 23. Opp. 2, 7. The circumstances here, where provisional class members may otherwise never get into court, present a compelling justification for class habeas treatment. *See J.A.V. v. Trump*, No. 1:25-CV-072, --- F.R.D. ----, 2025 WL 1256996, at *5 (S.D. Tex. May 1, 2025) (relying on All Writs Act to certify district-wide class).

## ARGUMENT

### I.     Petitioners Have Established Typicality and Adequacy

The main thrust of the government's opposition is that Petitioners are not members of the class, Opp. 2, but the government's own actions confirm that they are adequate representatives and have claims typical of the claims of the proposed class. The government has issued both Petitioners I-213 Forms alleging they are members of or affiliated with TdA, and it has reiterated those clams in immigration court. ECF No. 31-2 (Sherman Decl.) ¶ 3; ECF No. 2-2 (Hightower Decl.) ¶¶ 5-6. The Proclamation states:

> all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies.

ECF No. 4 at 4. Thus, at the very least, both Petitioners face an imminent risk of enforcement under the express terms of the Proclamation (as well as the manner in which the government has moved throughout the country, taking individuals whom they have likewise alleged to be TdA members out of immigration proceedings and, with no meaningful notice, sought to remove them under the AEA). Petitioners therefore have standing to serve as class representatives. See DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1197–98 (10th Cir. 2010) ("named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an *imminent threat* of being injured in the future" (emphasis added)).[2]

Respondents acknowledge that the proposed class definition—the one provisionally adopted by the Court—includes noncitizens who "will be subject to the [Proclamation]." Opp. 4. While the government states it has not currently designated Petitioners under the AEA, it has not foreclosed the possibility of doing so in the future. ECF No. 26-1 (Valdez Decl.) ¶¶ 15, 23. Nor has it even provided reassurances that it would not remove them pending this litigation, in contrast to other cases. See, e.g., Khan Decl., W.M.M. v. Trump, No. 25-cv-59-H (N.D. Tex. Apr. 25, 2025), ¶ 13 ("ICE does not intend to remove [petitioners] under the AEA while their habeas petitions are pending."); see also Bronson v. Swensen, 500 F.3d 1099, 1108 (10th Cir. 2007) (standing is more likely when plaintiffs lack assurances against prosecution). Importantly, where a policy by

---

[2] Respondents' observation that the Court has not determined Petitioners are subject to the Proclamation, Opp. 2, is beside the point because what matters is that the Court agreed "Petitioners have shown a sufficient risk of 'being designated' as TdA members, and thus falling under the Proclamation." ECF No. 35 at 15–16.

its terms applies to all class members—as the Proclamation and its implementation do here—the Tenth Circuit has rejected the idea that a defendant can defeat class certification just because it has not yet enforced the policy against some of them: "[C]ertification is appropriate even if the defendant's action or inaction 'has taken effect or is threatened only as to one or a few members of the class, provided it is based on *grounds* which have general application to the class.'" *Stricklin*, 594 F.3d at 1201 (citing Fed. R. Civ. P. 23(b)(2), 1966 Amendment advisory committee note); *see also M.D. v. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012) (same).

For these reasons, Petitioners are also adequate representatives. Respondents do not point to any conflicts the named Petitioners have with provisional class members, nor any reason why they would not be willing to vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002). Indeed, given how little process is given to individuals regarding their designation prior to removal, Petitioners have every reason to vigorously prosecute this case against the legality of the Proclamation and its implementation, before it is too late.

## II.     Petitioners Raise Multiple Common Legal Issues

The government apparently concedes that Petitioners raise one common question of whether the Proclamation complies with the AEA. *See* Opp. 13, 15. That is sufficient to find commonality. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999) ("commonality 'requires only a single issue common to the class'") (citing *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M. 1996)). Petitioners also raise a number of other common threshold questions regarding the legality of the Proclamation and its implementation. *See* ECF No. 4 at 10; *J.A.V.*, 2025 WL 1256996, at *4 (identifying various common

4

questions of law). Respondents argue that certain class members may be differently situated because of their immigration case postures, Opp. 15, but those factual differences between class members' claims do not defeat certification because common questions of law exist, *Stricklin*, 594 F.3d at 1195. For instance, it makes no difference that certain class members may not be removable under the Immigration and Nationality Act ("INA") because they have Temporary Protected Status while others are removable but seeking asylum and other humanitarian protections; those issues concern the government's authority under the immigration laws, which Petitioners do not challenge. Indeed, the whole point is that the government is seeking to circumvent the immigration laws and remove people under the AEA's wartime authority. These distinctions have no bearing on a threshold common question here: whether the AEA can be used during peacetime. Moreover, other common questions of law remain, such as whether the AEA Proclamation can completely displace the removal procedures of the INA, and class members can be removed to the notoriously brutal prison in El Salvador despite limits on where the United States can send people under the Convention Against Torture ("CAT"). These questions will plainly "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up).

Respondents contend that Petitioners' procedural and due process claims are "fact-specific," Opp. 15, but the most basic notice requirements do not vary across individuals in the AEA context. Courts regularly consider due process challenges and announce rules for the generality of cases, including in class actions. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 228-30 (2005); *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by*

5

*Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Feltz v. Regalado*, 751 F. Supp. 3d 1198, 1246 (N.D. Okla. 2024). The government presents no reason to think that the *baseline* procedural information in the notice forms or the amount of time provided should vary from person to person. As long as "final injunctive relief is . . . appropriate *respecting the whole class as a whole*"—like information about the right to seek judicial review, consistent phone access, forms written in Spanish, or 30 days to seek review—class certification is proper. *See Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1217 (10th Cir. 2014) (citations omitted); *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010) ("It is not difficult to find common factual and legal questions within a class of plaintiffs who all signed form contracts containing identical provisions."); *see also Lane Hollow Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 137 F.3d 799, 807 n.14 (4th Cir. 1998) (noting across various contexts that several days' notice does not satisfy due process). In light of these common questions, courts in AEA cases across the country have provisionally certified district-wide habeas classes and granted classwide injunctions, like this Court. *See* ECF No. 35 at 34.[3]

### III. Petitioners Satisfy Rule 23(b)(2)

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that that apply generally to the class, so that final

---

[3] Thus, in other AEA cases, the courts have rejected this argument. *See J.A.V.*, 2025 WL 1256996, at *6; *G.F.F. v. Trump*, No. 25-cv-2886 (S.D.N.Y. Apr. 9, 2025), ECF No. 31, *as amended*, ECF No. 35 (S.D.N.Y. Apr. 11, 2025); *A.S.R. v. Trump*, No. 3:25-cv-113, 2025 WL 1208275, at *4 (W.D. Pa. Apr. 25, 2025); *cf. Sanchez Puentes v. Garite*, No. EP-25-CV-00127-DB, 2025 WL 1203179, at *17 (W.D. Tex. Apr. 25, 2025) (sua sponte enjoining AEA removals out of the Western District of Texas "[b]ecause of the Executive's unpredictable and inconsistent use of [the AEA], and because of due process and jurisdiction considerations").

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "It is well established that civil rights actions are the paradigmatic 23(b)(2) class suits, for they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Skinner v. Uphoff*, 209 F.R.D. 484, 489 (D. Wyo. 2002).

Petitioners have a classic Rule 23(b)(2) class, because the Proclamation is a policy that applies to all class members, and a single injunction against its enforcement would eliminate every class member's injuries "in one stroke." *Wal-Mart*, 564 U.S. at 350. The whole purpose of Rule 23(b)(2) is to avoid having dozens or more plaintiffs litigating these identical legal claims in separate, parallel suits.

Respondents misread *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021). Opp. 15-16. First, neither case involved the question of what notice is due for individuals subject to the same policy. Second, the Supreme Court in *Jennings did* decide several common legal issues, on a classwide basis, involving the application of constitutional avoidance to several detention statutes. 583 U.S. at 296-306. Because the Court rejected all those claims, the *only* remaining issue was the individualized claim that required due process balancing of case-specific facts for people detained under different authorities. *Id*. at 312. Similarly, in *Reid*, the First Circuit found class certification inappropriate because it had considered, on a classwide basis, and rejected a brightline rule for when prolonged detention violates due process. *See* 17 F.4th at 5. These cases reflect the proper course here: courts first address the common legal issues on a classwide basis, and only if those fail would individuals litigate whether they are properly designated under the Proclamation on their particular facts.

7

See *J.A.V.*, 2025 WL 1256996, at *4-5. Provisional class members are not prejudiced as Respondents contend, Opp. 16, because if Petitioners prevail on these threshold issues, there is no need for individualized habeas petitions.

## IV. The Court Can Certify A Class Under Rule 23 Or In Equity

Ultimately, the parties agree that the Court can certify a class in habeas proceedings. *See* Opp. 7 ("This Court has limited authority to fashion appropriate procedures, akin to Rule 23, to manage complex habeas proceedings."); ECF No. 4 at 6 n.4. As such, the Court need not wade into the meaning of Rule 81 or whether there were historical analogues of Rule 23 class certification for habeas. Indeed, every circuit that has addressed the issue has found that a class habeas action may be maintained. *See, e.g.*, *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125–26 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112–13 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.2 (10th Cir. 1976); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996); *see also Monk v. Shulkin*, 855 F.3d 1312, 1319 (Fed. Cir. 2017).

Even if Rule 23 did not technically apply in habeas proceedings, Respondents recognize that courts sitting in equity have used Rule 23 as a guidepost to certify a class under the All Writs Act and principles of habeas jurisdiction and equity. Opp. 7. Judge Rodriguez, in the Southern District of Texas, recently surveyed these circuit court decisions to conclude that "district courts, in appropriate circumstances, may rely on the All Writs Act to fashion relief analogous to a class action," and that class certification was appropriate for a district-wide class similar to the one provisionally certified here. *J.A.V.*, 2025 WL 1256996, at *2. And as Respondents concede, the Tenth Circuit relied on cases

8

like *Sero* and *Bijeol* to hold that "class treatment" could be available by the court "apply[ing] an analogous procedure by reference to Rule 23." *Napier*, 542 F.2d at 827 & n.2; *see also* Opp. 6.

Respondents disagree that a class habeas is appropriate here, primarily because they believe that Petitioners do not have standing to provide jurisdiction over the case. Opp. 9. As demonstrated above, it is sufficient for Petitioners to show they face an imminent risk of being subject to the Proclamation. *Stricklin*, 594 F.3d at 1197–98.[4] Moreover, neither of the cases cited by Respondents limit class habeas to "narrow circumstances," Opp. 7; they, like others, use Rule 23 as a guide. *See Sero*, 506 F.2d at 1126 ("[O]ur conclusion that an analogous procedure [to Rule 23] may be employed in this case is bolstered by the Federal Rules' delineation of the circumstances which make multi-party actions appropriate."); *Bijeol*, 513 F.2d at 968 ("a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action under some circumstances"); *see also Napier*, 542 F.2d at 827 n.2.[5]

---

[4] Respondents cite Justice Thomas's concurrence in *Jennings* but he did not address the propriety of class habeas; rather, he argued that those plaintiffs could not invoke the Suspension Clause to get around an INA bar because they were not "seek[ing] habeas relief," 583 U.S. at 324 (Thomas, J., concurring). Here, the Supreme Court has already held that Petitioners must proceed in habeas. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025). Moreover, as this Court properly found, it has habeas jurisdiction, ECF No. 35 at 12-14, and Petitioners are not relying on the All Writs Act to expand jurisdiction but rather for class certification. *See* ECF No. 4 at 4 n.4; *J.A.V.*, 2025 WL 1256996, at *5–6.

[5] Respondents' remaining cases are inapposite. *Calderon v. Ashmus*, 523 U.S. 740 (1998), does not address the availability of class habeas; the Supreme Court declined class certification there because the action did not resolve any issues for the class. *Id*. at 749. In response to Petitioners' cases where the Supreme Court considered habeas class actions, Respondents rely on *Wilkens v. United States* to say a "drive-by jurisdictional ruling" lacks "precedential effect." 598 U.S. 152, 160 (2023). *Wilkens* referred to the "drive-by" ruling *dismissing* a case for lack of jurisdiction. *Id*. That does not carry the same precedential value as the cases Petitioners cite. Because courts can only consider cases

9

Even if compelling circumstances were required, Petitioners and the provisional class meet that standard for class treatment because they are detained and generally lack resources and English proficiency to bring their own cases—particularly on the incredibly restrictive timeline adopted by the government. *See* ECF No. 45-10 (Sherman Decl.) ¶¶ 7-11; ECF No. 44-1 (Cisneros Decl.) ¶ 11. If people designated under the AEA are forced to litigate their claims on an individual basis under Respondents' notice regime, many, if not most, designees will be deported to a notorious Salvadoran prison before they could seek judicial review. This too weighs in favor of permitting a class to litigate the threshold legal questions, under either Rule 23 or in equity. *See, e.g.*, *U.S. ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals, such as many of the class members here, who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf."); *Sero*, 506 F.2d at 1126 ("Because many of those serving reformatory sentences are likely to be illiterate or poorly educated, and since most would not have the benefit of counsel to prepare habeas corpus petitions, it is not improbable that more than a few would otherwise never receive the relief here sought on their behalf."); William B. Rubenstein, Newberg & Rubenstein on Class Actions § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

## CONCLUSION

The Court should grant Petitioners' motion to certify the class.

---

over which it has jurisdiction, it is significant that the Supreme Court has considered on the merits multiple habeas class actions. *See* ECF No. 4 at 6 n.4.

Dated: May 2, 2025

                    Respectfully submitted,

*/s/ Lee Gelernt*
_____
Lee Gelernt
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat
Hina Shamsi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
odjadwat@aclu.org
hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org

Timothy R. Macdonald
Sara R. Neel
Emma Mclean-Riggs
Anna I. Kurtz
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF COLORADO

11

303 E. 17th Avenue
Denver, CO 80203
(303) 777-5482
tmacdonald@aclu-co.org
sneel@aclu-co.org
emcleanriggs@aclu-co.org
akurtz@aclu-co.org

Tamara F. Goodlette
Laura P. Lunn
Monique R. Sherman
Rocky Mountain Immigrant Advocacy Network
tgoodlette@rmian.org
llunn@rmian.org
msherman@rmian.org

*Attorneys for Petitioners-Plaintiffs*
*\* Attorney not yet admitted to the District of Colorado*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I electronically filed the foregoing **REPLY IN SUPPORT OF PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system, and that in accordance with Fed. R. Civ. P. 5, all counsel of record shall be served electronically through such filing.

*/s/ Sara R. Neel*
Sara R. Neel